**No. 25-30449**

# In the United States Court of Appeals for the Fifth Circuit

SHIRAH HERBERT, individually and on behalf of D.H., a minor child,

*Plaintiff-Appellant*

v.

ST. JAMES PARISH SCHOOL BOARD,

*Defendant-Appellee*

On Appeal from the United States District Court for the Eastern District of Louisiana, New Orleans
Civil Action No. 2:25-cv-00758

**BRIEF OF APPELLANT**

Kimona Hogan
HOGAN LAW FIRM, L.L.C.
176 Misty Pike Drive
Raleigh, North Carolina 27603
(225) 800-7378 (office)
(855) 219-6864 (fax)
hoganlawfirm@yahoo.com
Counsel for Plaintiff-Appellant

**No. 25-30449**

# In the United States Court of Appeals for the Fifth Circuit

SHIRAH HERBERT, individually and on behalf of D.H., a minor child,

*Plaintiff-Appellant*

v.

ST. JAMES PARISH SCHOOL BOARD,

*Defendant-Appellee*

On Appeal from the United States District Court for the Eastern District of Louisiana, New Orleans
Civil Action No. 2:25-cv-00758

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

1

1) **<u>Plaintiff-Appellant</u>:**

Shirah Herbert, individually and on behalf of D.H., a minor child;

D.H., a minor child

2) **<u>Defendant-Appellee</u>:**

St. James Parish School Board

3) **<u>Counsel for Plaintiff-Appellant</u>:**

Kimona Hogan/Hogan Law Firm, L.L.C.

4) **<u>Counsel for Defendant-Appellee</u>:**

Timothy Riveria; Nathan Long; Wayne T. Stewart/Hammonds, Sills,

Guice, Noah, & Perkins, L.L.P.

5) **<u>Third-Party Administrator for Defendant-Appellee</u>:**

Louisiana Organization for Claims Administration (LoCA)

6) **<u>Unknown insurer or indemnitor for Defendant-Appellee</u>:**

Entity represented by LoCA as claims administrator

Counsel is not aware of any other persons or entities that have or may have a

financial interest in the outcome of this litigation.  Counsel notes that minor

child's father is not a party to this appeal and has not participated in the

proceedings below.

<u>/s/ Kimona Hogan</u>
**KIMONA HOGAN**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument as she believes it will significantly aid the Court because this appeal presents interlocking questions of IDEA entitlement; disability-based discrimination and retaliation under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities Act ("ADA"); the duration and effect of stay-put protections; and the proper standard of judicial review of administrative decisions under the Individuals with Disabilities Education Act ("IDEA"). The issues involve nuanced statutory interaction and procedural errors unlikely to be fully resolved on the written submissions alone.

Oral presentation will assist the Court in addressing: (1) whether the complaint plausibly alleges disability-based discrimination and retaliation where the School Board disenrolled the student shortly after finding him eligible for special education; (2) whether residency determines which School Board provides services rather than extinguishing IDEA rights altogether; (3) whether the District court's failure to conduct the modified *de novo* review required by 20 U.S.C. § 1415(i)(2)(C) warrants remand; and (4) whether an unappealed stay-put order under § 1415(j) remains binding through federal review when the underlying administrative case is dismissed for lack of jurisdiction, or may be retroactively nullified by such dismissal. Because these

3

legal and procedural questions are unsettled, oral argument would materially aid the Court's decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................... 1

STATEMENT REGARDING ORAL ARGUMENT ..................................... 3

TABLE OF CONTENTS ............................................................................. 5

TABLE OF AUTHORITIES ........................................................................ 7

JURISDICTIONAL STATEMENT ........................................................... 10

ISSUES PRESENTED FOR REVIEW ....................................................... 12

STATEMENT OF THE CASE .................................................................... 15

SUMMARY OF THE ARGUMENT ........................................................... 21

STANDARD OF REVIEW ......................................................................... 27

ARGUMENT ............................................................................................. 32

**I. Disability Discrimination and Retaliation Under Section 504 and Title II ....................................................................................................... 32**

**II. Residency Is Not a Jurisdictional Bar to IDEA Relief ..................... 40**

**III. The District court Failed to Conduct Independent Review and Ignored Procedural Violations ...................................................... 49**

**IV. The District court Erred in Refusing to Recognize the Binding Effect of the Stay-put Order** ................................................................ 57

**V. D.H. Is Entitled to Compensatory Education for the Period of Complete Denial of FAPE** ............................................................ 64

CONCLUSION ................................................................................. 68

CERTIFICATE OF SERVICE ............................................................ 72

CERTIFICATE OF COMPLIANCE .................................................... 72

# TABLE OF AUTHORITIES

**Cases**

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ........................ 63

*Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982) ...................................... 41,44,51,56

*Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985) ........................... 59

*Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66 (1999) .......................... 41

*Commodity Futures Trading Comm'n v. Scho*r, 478 U.S. 833 (1986).................... 62

*Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038 (9th Cir. 2013)....................52,53

*Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275 (11th Cir. 2008) .................... 66

*Dun & Bradstreet Corp. v. FTC*, 552 F.2d 582 (5th Cir. 1977)............................ 63

*Feist v. Louisiana Dep't of Justice*, 730 F.3d 450, 454–55 (5th Cir. 2013)............. 32

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) ........................................ 41

*Frame v. City of Arlington*, 657 F.3d 215, 220 (5th Cir. 2011) ..................22,28,32

*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56,58 (1982)...................... 11

*Honig v. Doe*, 484 U.S. 305 (1988) ...........................23,30,41,47,58,59,60,61,64

*Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000)...............14,65

*ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270 (1987) .................................... 63

*Janvey v. Alguire,* 647 F.3d 585 (5th Cir. 2011) .............................................. 31

*K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795 (8th Cir. 2011) ........................... 56

*Klein Indep. Sch. Dist. v. Hovem,* 690 F.3d 390 (5th Cir. 2012) ............ 25,28,46,49

*Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)....................................... 35

*L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900 (9th Cir. 2009) ................... 55

*M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60 (2d Cir. 2000).............................. 55

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)........ 28

*Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) ......................... 35

*N.L. v. Knox Cnty. Schs.*, 315 F.3d 688 (6th Cir. 2003) ..................................... 53

*Reid v. School Board of Columbia*, 401 F.3d 516 (D.C. Cir. 2005) ............. 66,67,68

*Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961 (5th Cir. 2016) ......
..................................................................................................... 28, 42,48,51

*Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) ................... 32,36

*Schaffer v. Weast*, 546 U.S. 49 (2005) ...................................................................
.................................................................................13,18,23,44,45,49,50,70

*School Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985) ..................... 65

*St. Tammany Par. Sch. Bd. v. Louisiana*, 142 F.3d 776 (5th Cir. 1998)..................
........................................................................................ 22,29,41,43,47,48,49

*Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57 (5th Cir. 2016).......................
...........................................................................................23,30,58,59,60,64

*United States v. Olano*, 507 U.S. 725 (1993)...................................................... 61

*United States v. Vonn*, 535 U.S. 55 (2002) ........................................................ 62

*Wagner v. Bd. of Educ.*, 335 F.3d 297 (4th Cir. 2003).............................30,44,61

*Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) ................................... 56

*Zinermon v. Burch*, 494 U.S. 113 (1990) ....................................................... 62

**Statutes and Regulations**

20 U.S.C. § 1412(a)(1)(A) .................................................................41,47

20 U.S.C. § 1412(a)(3) ................................................................... 44

20 U.S.C. § 1415(b)(3) ...............................................................17,44,47

20 U.S.C. § 1415(i)(2)(C) .....................................................................

................................................ 3,12,19,23,24,25,27,29,31,45-46,49,56,70,71

20 U.S.C. § 1415(i)(2)(C)(iii) ................................................................ 66

20 U.S.C. § 1415(i)(3)(B) ................................................................. 57

20 U.S.C. § 1415(j) ........................................................ 10,13,23,30,60,61,64

20 U.S.C. § 1415(l) ..................................................................... 48

34 C.F.R. § 300.111 .................................................................... 44

34 C.F.R. § 300.502(b)(2) ...............................................................13,50,52

34 C.F.R. § 300.502(b)(2)(i)................................................................. 72

34 C.F.R. § 300.503 .................................................................... 44

## JURISDICTIONAL STATEMENT

The District court had subject-matter jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A), which authorizes civil actions under the IDEA; 28 U.S.C. § 1331, because the action arises under federal law; and the enforcement provisions of Section 504, 29 U.S.C. § 794a(a)(2), and the ADA, 42 U.S.C. § 12133.

This Court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 1292(a)(1). On June 16, 2025, the District court entered an *Order & Reasons* (ROA.423–439) denying Appellant's motion for preliminary injunction seeking enforcement of the IDEA's "Stay-put" provision, 20 U.S.C. § 1415(j). Denial of a preliminary injunction is immediately appealable as an interlocutory order under 28 U.S.C. § 1292(a)(1). On July 8, 2025, the District court entered its *Order & Reasons* (ROA.491–506) and *Judgment* (ROA.507) dismissing all claims with prejudice. This final judgment is appealable under 28 U.S.C. § 1291.

Appellant timely filed her Notice of Appeal on August 6, 2025 (ROA.508–510), within thirty days of the final judgment as required by Federal Rule of Appellate Procedure 4(a)(1)(A). The Notice of Appeal covers both the interlocutory order denying injunctive relief and the final judgment dismissing all claims. Under the well-established merger doctrine, an appeal from a final judgment brings before the Court all

prior non-final orders and rulings for review. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Accordingly, this Court has jurisdiction to review both the June 16, 2025 interlocutory order denying preliminary injunctive relief and the July 8, 2025 final judgment dismissing all claims.

**ISSUES PRESENTED FOR REVIEW**

I.    **Disability Discrimination**

Whether the District court erred in dismissing Appellant's disability discrimination and retaliation claims under Section 504 and the ADA at the pleading stage, despite plausible allegations that the School Board used pretextual residency enforcement to disenroll D.H. shortly after finding him eligible for special education.

II.    **Belated Residency Defense Cannot Defeat IDEA's Procedural Safeguards and Stay-Put Protections**

Whether the District court erred by allowing the School Board to avoid IDEA's procedural safeguards and stay-put protections through a residency defense raised only after enrolling D.H., completing evaluations, and finding him eligible for special education, thereby depriving him of protections that attach during eligibility disputes regardless of threshold issues.

III.    **Failure to Conduct *De novo* Review and Adjudicate the IEE Funding Obligation**

Whether the District court erred in adopting the administrative Law Judge's ("ALJ's") residency-based dismissal without conducting the modified *de novo* review required by 20 U.S.C. § 1415(i)(2)(C), where the ALJ (1) failed

12

to assign the burden of proof as required by *Schaffer v. Weast*, 546 U.S. 49 (2005), and (2) dismissed the due-process complaint without adjudicating the School Board's obligation under 34 C.F.R. § 300.502(b)(2) to fund an independent educational evaluation at public expense or prove the appropriateness of its own evaluation..

**IV.   Stay-put Violation and Continuation Through Judicial Review**

Whether the District court erred in refusing to enforce the ALJ's January 13, 2025 stay-put order and in holding that stay-put protections terminated upon administrative dismissal, where: (1) stay-put operates as an automatic statutory injunction throughout the pendency of all administrative and judicial proceedings under 20 U.S.C. § 1415(j); (2) stay-put is a procedural safeguard that functions independently of the merits; and (3) the court's refusal to enforce stay-put during judicial review deprived D.H. of the educational stability Congress intended and contravened the statutory mandate that stay-put remain in effect during the pendency of any proceedings.

**V.   Compensatory Education for Continuing Denial of FAPE**

Whether the District court erred in denying compensatory education where D.H. was found eligible for special education on October 22, 2024, but— aside from a brief, temporary return—received no special-education or

13

related services from November 4, 2024, onward due to disenrollment without an IEP meeting and the School Board's subsequent failure to implement the January 13, 2025 stay-put order, resulting in a continuing denial of a free appropriate public education ("FAPE") and entitling him to compensatory education under *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000).

**STATEMENT OF THE CASE**

## I.   Nature of the Case and Proceedings Below

This appeal challenges the District court's dismissal with prejudice of Appellant's claims under Section 504, the ADA, and the IDEA after the St. James Parish School Board unilaterally disenrolled D.H., a student found eligible for special education, shortly following his eligibility determination and without providing required procedural safeguards. (ROA.8–45, 491–507, 529–531, 632).

The case was filed in the Eastern District of Louisiana on April 17, 2025, and assigned to Judge Barry W. Ashe with Magistrate Judge Karen Wells Roby. (ROA.1–2). The District court denied Appellant's ex parte motion for temporary restraining order (ROA.87) and later conducted a preliminary injunction hearing on May 19, 2025 (ROA.95, 719–750). On June 16, 2025, the district court denied preliminary injunctive relief, concluding that the School Board had no IDEA obligations, including enforcement of the ALJ's Stay-put order, based on its determination that residency was a prerequisite to those protections. (ROA.423–439). On July 8, 2025, the court granted the School Board's motion to dismiss under Rule 12(b)(6), adopting the ALJ's residency finding and dismissing all claims with

15

prejudice. (ROA.491–507). Appellant timely filed a Notice of Appeal on August 6, 2025. (ROA.508–510).

## II. Factual Background

### A. Eligibility Determination and Disenrollment

D.H. enrolled in August 2024 at Cypress Grove Montessori Academy ("CGMA"), a public school operated by the St. James Parish School Board. At enrollment, Appellant disclosed her St. John Parish residence in the enrollment application while also documenting D.H.'s childcare arrangement in St. James Parish. The School Board reviewed this information and accepted enrollment without raising any objection or requesting additional proof of residency. (ROA.13–15, 341–350, 355, 424–427). The School Board initiated a special-education evaluation, and on October 22, 2024, determined that D.H. was eligible for special education services under the category of developmental delay (ROA.289-317) and scheduled an IEP meeting for November 7, 2024. (ROA.15–16). This determination triggered the School Board's duty to develop and implement an IEP within thirty days. 34 C.F.R. § 300.323(c)(1).

Before that initial IEP meeting occurred, on November 1, 2024, the School Board notified Appellant that D.H. would be disenrolled effective November 4, 2024, on the ground that he was "not entitled to FAPE" due

16

to non-residency and cancelled the scheduled IEP meeting. (ROA.16–18). The School Board did not provide the parent with an opportunity to contest the decision and did not provide the required prior written notice, violating the procedural safeguards of 20 U.S.C. § 1415(b)(3) and (c)(1). Following disenrollment, D.H. received no educational or related services, resulting in a complete cessation of his special-education program. (ROA.16–19, 369).

### B. Administrative Proceedings

On November 26, 2024, Appellant filed a Request for a Special Education Due Process Hearing and a Motion for Stay-put with the Louisiana Department of Education, which referred the matter to the Division of Administrative Law (*DAL Docket No. 2024-54456-DOE-IDEA*). (ROA.230–236; ROA.237–239). Appellant also requested an IEE and in response, the School Board provided written notice that it would initiate a due process hearing to demonstrate its evaluation is appropriate (ROA.318–320, 629-630)

On January 13, 2025, the ALJ granted Stay-put, finding that D.H. was enrolled, attending school, and entitled to remain in his educational placement during the pendency of the proceedings. (ROA.327–331).

In response to the School Board filing an exception for jurisdiction, a limited hearing on residency alone occurred on January 16, 2025, but the

ALJ failed to assign the burden of proof, contrary to *Schaffer v. Weast*, 546 U.S. 49 (2005). (ROA.279–283). On January 31, 2025, the ALJ issued an "Order on Minor's Residency," finding that D.H. did not reside within St. James Parish and dismissing the complaint for lack of subject matter jurisdiction, without addressing the alleged denial of FAPE, procedural-safeguard violations, or Appellant's pending request for an IEE. (ROA.334–340). The Division of Administrative Law issued its notice of decision on February 3, 2025, advising of the ninety-day right to file a civil action. (ROA.338).

## C. District Court Proceedings

On April 17, 2025, Appellant filed this civil action under the IDEA, Section 504, and the ADA, seeking declaratory and injunctive relief, enforcement of the Stay-put order, compensatory education, attorneys' fees, and costs. (ROA.8–45). Appellant alleged that the School Board:

1. Discriminated on the basis of disability by accepting D.H.'s enrollment, initiating evaluation, determining eligibility, and then, within days of that determination and before providing any services, unilaterally disenrolling him on residency grounds that the School Board had constructively waived;

18

2. Failed to develop an IEP within thirty days of D.H.'s eligibility determination;

3. Disenrolled D.H. without prior written notice or an opportunity to contest residency;

4. Failed to adjudicate or fund Appellant's request for an IEE; and

5. That the ALJ unreasonably delayed issuing the stay-put order and prematurely dismissed the due-process proceedings without adjudicating D.H.'s right to FAPE, the asserted procedural violations, or the parent's pending IEE due-process request.

Appellant sought reversal of the ALJ's orders, declaratory findings of IDEA and Section 504 violations, compensatory services, and attorney's fees. (*Id.*)

After briefing and the May 19, 2025 preliminary-injunction hearing (ROA.166-176), the District court denied relief on June 16, 2025, concluding that residency was a "threshold prerequisite" to any IDEA or Stay-put protection. (ROA.423–438).  On July 8, 2025, the court granted the School Board's Rule 12(b)(6) motion and dismissed all claims, holding that (a) residency, not enrollment, determined IDEA responsibility; (b) D.H. was not "otherwise qualified" under Section 504 or the ADA; and (c) no further review was warranted. (ROA.491–507).  The court did not

19

perform the "modified *de novo*" review required by 20 U.S.C. §

1415(i)(2)(C), instead adopting the ALJ's residency finding and converting

a Rule 12(b)(6) motion into an improper summary affirmance of the

administrative decision.

## SUMMARY OF THE ARGUMENT

This case asks whether a school board, having exercised discretion to enroll a child under its residency policy and determined him eligible for special education, may later deny him all IDEA protections by retroactively revoking that enrollment on residency grounds. In this case, the School Board's conduct went beyond mere oversight of residency requirements; it affirmatively accepted the student's childcare arrangement and his parent's residence at the time of enrollment, notwithstanding material documentation deficiencies. (ROA.351). With full knowledge of these facts and deficiencies, it enrolled D.H., assigned him a student identification number, conducted a full special-education evaluation, and found him eligible for special education under the category of developmental delay (ROA.289). Only after completing eligibility determination process and immediately before convening his initial IEP meeting did the School Board abruptly reverse course, invoking the same residency facts it had long accepted to deny D.H. all IDEA protections (ROA369, 372). That decision conflicts with the IDEA's text, this Court's precedent, and basic principles of disability law and administrative finality.

First, the District court erred by dismissing Appellant's disability-discrimination claims at the pleading stage. The School Board enrolled D.H. with full knowledge of his parent's residence and his childcare arrangement in

21

St. James Parish, assigned him a student identification number, and conducted a full special-education evaluation. On October 22, 2024, the School Board determined that D.H. was eligible for special-education and scheduled an initial IEP meeting for November 7, 2024. Less than two weeks later and just days before that scheduled IEP meeting, the School Board abruptly disenrolled D.H. based on the same residency facts it had accepted for months. This sudden reversal, occurring so soon after identifying D.H.'s disability, and the selective enforcement of residency rules only after finding the student eligible, plausibly allege intentional discrimination and retaliation in violation of Section 504 and Title II of the ADA. *Frame v. City of Arlington*, 657 F.3d 215, 220 (5th Cir. 2011) (en banc) (holding that Title II and Section 504 prohibit public entities from excluding qualified individuals from public programs or services because of disability).

Second, the district court erred by allowing the School Board to use residency as a post hoc escape from its IDEA obligations after it had already taken affirmative steps that triggered those obligations. Residency determines which local agency bears responsibility for providing FAPE, not whether a child is entitled to IDEA protections. *St. Tammany Par. Sch. Bd. v. Louisiana*, 142 F.3d 776, 780 (5th Cir. 1998). By accepting D.H's enrollment, fully aware of his disclosed childcare arrangement, initiating evaluations, and determining

him eligible for special education, the School Board affirmatively accepted jurisdiction and became bound by IDEA's procedural and substantive safeguards. Having done so, it could not later disclaim responsibility to avoid its stay-put and FAPE duties. The ALJ further erred by limiting the hearing to residency without assigning the burden of proof as required by *Schaffer v. Weast*, 546 U.S. 49, 56–58 (2005), and the District court compounded that error by adopting those flawed findings rather than conducting the *de novo* review mandated by 20 U.S.C. § 1415(i)(2)(C).

Third, the District court refused to enforce the ALJ's unappealed January 13, 2025, stay-put order, holding that protections under 20 U.S.C. § 1415(j) terminate upon administrative dismissal. That decision conflicts with *Honig v. Doe*, 484 U.S. 305, 323 (1988), and *Tina M. v. St. Tammany Parish School Board*, 816 F.3d 57, 61 (5th Cir. 2016), which establish that stay-put functions as an automatic injunction preserving a child's educational placement during the pendency of any proceedings.

The School Board initially complied with the stay-put order by reinstating D.H.'s enrollment, an admission that the ALJ possessed authority to issue the order and that D.H. remained entitled to IDEA protections. The School Board cannot now invoke jurisdictional defects to escape obligations it already accepted.

23

Moreover, the IDEA expressly allows a party ninety (90) days to seek judicial review of a final administrative decision, 20 U.S.C. § 1415(i)(2)(B). During that appeal period, the controversy remains "pending" because the parent's statutory right to obtain review has not expired. Here, the parent timely filed the civil action within the ninety (90)-day window; thus, the stay-put order remained operative as a matter of law. To hold otherwise would nullify Congress' guarantee of uninterrupted educational stability during disputes.

By declining to enforce the binding order, the District court denied D.H. the educational stability Congress mandated and undermined the IDEA's core purpose of maintaining continuity in a child's education during disputes.

Fourth, the District court dismissed Appellant's IDEA claims under Rule 12(b)(6) without conducting the "modified *de novo*" review required by 20 U.S.C. § 1415(i)(2)(C). Instead of independently determining whether D.H. was denied a FAPE, the court adopted the administrative law judge's residency finding wholesale, effectively converting a motion to dismiss into a summary affirmance. This contravened Congress' command that reviewing courts "base their decision on the preponderance of the evidence" and make independent factual determinations. *See* 20 U.S.C. § 1415(i)(2)(C); *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 395 (5th Cir. 2012).

On July 8, 2025, the district court granted the School Board's motion to dismiss, adopting the ALJ's residency finding and dismissing all claims with prejudice. This dismissal followed the court's June 16, 2025 preliminary injunction ruling, which had already applied the same flawed analysis. In both decisions, the court did not engage in the required review of the administrative record or make an independent determination based on the preponderance of the evidence. Rather than reviewing the evidence, the court applied the Rule 12(b)(6) pleading standard and concluded that Appellant failed to state a claim under the IDEA, Section 504, or the ADA.

The court failed to examine the administrative record to determine whether D.H. was denied FAPE after being found eligible on October 22, 2024; failed to determine whether he was entitled to compensatory education for the period covered by the unappealed January 13, 2025 stay-put order during which he received no services; and failed to address the School Board's procedural violations, including its refusal to adjudicate or fund Appellant's request for an IEE. These omissions collectively deprived the parent of meaningful participation and the procedural safeguards guaranteed under the IDEA.

Finally, D.H. is entitled to compensatory education. He received no special-education or related services from November 4, 2024 (disenrollment)

25

onward, even after the January 13, 2025 stay-put order, because the School Board never convened an initial IEP meeting.  Under 34 C.F.R. § 300.323(c)(1), the School Board was required to develop an IEP and hold an initial meeting within thirty days of D.H.'s October 22, 2024, eligibility determination.  The School Board failed to do so, and instead, it disenrolled D.H. on November 4, 2024, days before the scheduled November 7 meeting, and never reconvened to develop the required IEP.  Even after the ALJ January 13, 2025 stay-put order reinstated D.H.'s enrollment, the School Board continued to deny him services by refusing to hold the initial IEP meeting.  This complete and continuing denial of FAPE entitles D.H. to compensatory education under *Houston ISD v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000).  Compensatory education is an equitable remedy designed to place the child in the position he would have occupied but for the denial of FAPE, and D.H. is entitled to services for the full period during which he was denied FAPE.

The district court's decision effectively permits school boards to enroll a child under their own policies, complete the evaluation process, determine eligibility for special education, and then invoke residency as a post hoc defense to disenroll the student based on facts known at enrollment. This approach allows school boards to exploit the IDEA process when convenient while disavowing its obligations once eligibility is established. It enables

26

selective enforcement of residency policies to avoid IDEA responsibilities and shields disability-based exclusion from judicial review—contrary to Congress' intent to ensure continuity, accountability, and equal access for students with disabilities.

By dismissing Appellant's disability-discrimination claims at the pleading stage and declining to enforce the IDEA's procedural protections, the District court's ruling conflicts with the structure and purpose of the IDEA and the ADA's prohibition against discrimination. If left undisturbed, it would invite school boards to use residency enforcement as a pretext for excluding children with disabilities after identifying their needs. This Court should reverse and remand with instructions to conduct the independent review required by 20 U.S.C. § 1415(i)(2)(C), enforce the unappealed stay-put order, and adjudicate Appellant's FAPE and discrimination claims on the merits.

## STANDARD OF REVIEW

I. **Dismissal Under Rule 12(b)(6) and Section 504/ADA Claims**

This Court reviews *de novo* a dismissal under Federal Rule of Civil Procedure 12(b)(6), accepting all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor. *Lormand v. US. Unwired, Inc.* 565 F.3d 228 (5th Cir. 2009); *In re Katrina Canal Breaches Litig.*, 495

F.3d 191, 205 (5th Cir. 2007). A complaint states a claim when it pleads "sufficient factual matter" to be plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a claim under Section 504 of the Rehabilitation Act and Title II of the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in, denied the benefits of, or otherwise discriminated against by a public entity; and (3) such exclusion or discrimination occurred by reason of disability. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

II.    **IDEA Claims — Modified *de novo* Review**

IDEA claims are reviewed under a modified *de novo* standard in which this Court independently examines the administrative record while giving due weight to the administrative findings. *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016); *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 395 (5th Cir. 2012). The statute directs that the court "receive the records of the administrative proceedings," may "hear additional evidence," and must "base its decision on the preponderance of the evidence" and make independent factual

28

determinations. 20 U.S.C. § 1415(i)(2)(C). The district court's legal conclusions are reviewed *de novo* and its factual findings for clear error. *E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 758 (5th Cir. 2018). Dismissing IDEA claims under Rule 12(b)(6) by adopting the ALJ's findings without conducting the independent, record-based review required by 20 U.S.C. § 1415(i)(2)(C) is reversible error. The district court failed to perform the "modified *de novo*" review mandated by the IDEA because it confined itself to the pleadings, adopted the ALJ's residency conclusion without independent fact-finding, applied the Rule 12(b)(6) plausibility standard instead of the preponderance-of-the-evidence standard, and ignored record evidence showing the School Board enrolled D.H., completed his evaluation and eligibility determination, and only later invoked residency inconsistently to avoid IDEA obligations. Residency is not a jurisdictional bar to IDEA rights but determines which local educational agency provides services. See *St. Tammany Par. Sch. Bd. v. Louisiana*, 142 F.3d 776, 780 (5th Cir. 1998). Because residency turns on facts and credibility, it must be reviewed under the modified *de novo* standard, not resolved on a pleadings-only motion. The court's failure to apply that standard and to evaluate the

record for FAPE, IEE, and related procedural issues constitutes legal error subject to *de novo* review on appeal.

## III. Stay-put and Injunctive Relief

The IDEA's stay-put provision, 20 U.S.C. § 1415(j), operates as an automatic statutory injunction that maintains a child's educational placement during the pendency of any administrative or judicial proceedings. *Honig v. Doe*, 484 U.S. 305, 323 (1988); *Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57, 61 (5th Cir. 2016). Whether stay-put protections apply presents a question of law reviewed *de novo. Wagner v. Bd. of Educ.*, 335 F.3d 297, 301 (4th Cir. 2003). Factual findings underlying that determination, such as whether the student was enrolled, evaluated, and found eligible for special education, are reviewed for clear error. Because stay-put is a mandatory statutory command rather than a discretionary equitable remedy, a district court's denial of stay-put protections is reviewed *de novo* as a matter of statutory interpretation and application. *Honig*, 484 U.S. at 323 ("stay-put is not a discretionary equitable remedy"); *Tina M.*, 816 F.3d at 61.

## IV. Preliminary Injunction

The denial of a preliminary injunction is reviewed for abuse of discretion; underlying legal conclusions are reviewed *de novo* and factual

30

findings for clear error. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). A district court abuses its discretion when it applies an incorrect legal standard. Here, the district court applied the wrong standard by using the Rule 12(b)(6) pleading framework rather than the "modified *de novo*" review required under 20 U.S.C. § 1415(i)(2)(C). Instead of independently evaluating the administrative record and determining, by a preponderance of the evidence, whether D.H. was denied a FAPE, the court asked only whether the complaint stated a plausible claim. This procedural error distorted the IDEA's required review process and undermined the court's analysis of likelihood of success on the merits, warranting reversal.

## ARGUMENT

## I. Disability Discrimination and Retaliation Under Section 504 and Title II

## A. Legal Standard

Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act prohibit disability-based exclusion from participation in, or denial of benefits of, public education programs receiving federal financial assistance. To state a claim, a plaintiff must allege that (1) the student is a qualified individual with a disability; (2) he was excluded from participation in or denied benefits of a public program; (3) the exclusion occurred by reason of disability; and (4) the public entity receives federal financial assistance. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc). Intentional discrimination may be shown through deliberate indifference or pretext. *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020).

Retaliation under Section 504 and Title II requires that (1) the plaintiff engaged in protected activity; (2) the public entity took an adverse action; and (3) a causal connection exists between the two. *Feist v. Louisiana Dep't of Justice*, 730 F.3d 450, 454–55 (5th Cir. 2013); *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Temporal proximity, policy deviation, and inconsistent application of neutral rules may demonstrate pretext.

32

At the pleading stage, courts must accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint survives dismissal when its allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint need not prove the claim, it need only allege facts that, if true, plausibly suggest discrimination or retaliation.

## B. The Complaint Plausibly Alleges Disability Discrimination

The complaint presents a clear chronology showing that the School Board's stated reason for disenrollment—residency—was a pretext for disability-based exclusion. The School Board possessed all residency information from the outset, exercised discretion to approve enrollment, and reversed course only after learning D.H. had a disability requiring costly special-education services.

## 1. Full Disclosure and Discretionary Enrollment Approval

On August 7, 2024, Appellant submitted D.H.'s enrollment application, fully disclosing both St. John and St. James addresses. (ROA.13–14.) The application was reviewed and approved by Amy Laiche, the Superintendent's designee, consistent with the St. James Parish School Board's Residency Policy. (ROA.361–368.) That policy authorizes the Superintendent or

33

designee to approve enrollment of non-resident students under limited circumstances.

The School Board exercised this discretion knowingly. Despite a missing Social Security card and Appellant's explicit disclosure of dual addresses, the Superintendent's designee approved D.H.'s enrollment and allowed him to attend school for over two months. (ROA.13–14.) The School Board's subsequent reliance on those same residency facts to justify disenrollment, only after D.H. was found eligible for special education, was an abrupt and selective reversal that plausibly suggests the disability determination, not the residency facts, motivated the decision.

## 2. Disability Identification and Abrupt Reversal

The School Board conducted the evaluation that found D.H. eligible for special-education services on October 22, 2024. Thirteen days later on November 4, 2024, the School Board disenrolled him using the same residency information it had accepted since enrollment. The timing is stark: the School Board took no action on residency for months, then acted within two weeks of the disability determination.

The School Board's willingness to waive documentation requirements at enrollment but to rigidly enforce residency rules immediately after the disability determination supports an inference that disability, not residency,

motivated the disenrollment decision. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (inconsistent policy enforcement evidences pretext). The School Board's explanation, that it "discovered" residency issues only after enrollment, is implausible given Appellant's upfront disclosure and the Superintendent-designee's express approval.

### 3. Selective Enforcement and Pretext

The record supports a reasonable inference that the School Board selectively enforced its residency rules. The facts concerning the parent's and D.H.'s addresses were known and accepted from the outset, yet the School Board acted to disenroll D.H. only after his disability was confirmed. This pattern, acceptance before disability identification, rejection after—is the hallmark of pretextual decision-making. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

The School Board's actions also suggest a financial motive. Special-education services impose significant costs on school boards, including evaluations, IEP development, specialized instruction, related services, and ongoing compliance obligations. The School Board's sudden enforcement of residency rules immediately after learning D.H. would require such services, and three days before the IEP meeting where those services would be specified and quantified, plausibly suggests the School Board sought to avoid those costs

35

by invoking a neutral-sounding policy it had previously waived. Although not expressly labeled as such below, the factual record, showing disenrollment immediately after identifying D.H.'s eligibility, supports the reasonable inference that cost avoidance motivated the School Board's reversal.

Taken together, these allegations, full disclosure at enrollment, the Superintendent-designee's discretionary approval, the two-month delay followed by abrupt reversal within thirteen days of disability identification, and the School Board's implausible claim that it "discovered" facts Herbert had disclosed from the outset, plausibly allege that D.H. was excluded by reason of disability, satisfying the third *Frame* element.

## C. The Complaint Plausibly Alleges Retaliation for Protected Activity

Appellant's request that the School Board convene an initial IEP meeting to implement services based on the October 22 eligibility determination constitutes protected activity under Section 504 and Title II. *Septimus*, 399 F.3d at 608. On November 1, 2024, the parent reiterated that request to convene the IEP meeting, and the School Board refused to keep the scheduled the IEP meeting for November 7.. (ROA.16.) Three days later on November 4 the School Board disenrolled D.H. and canceled the meeting. (ROA.16–17.)

36

This close temporal proximity between Appellant's assertion of protected rights and the School Board's adverse action supports an inference of retaliation. The School Board's decision to disenroll D.H. three days before the scheduled IEP meeting, thereby avoiding its obligation to develop an IEP and provide services further suggests retaliatory motive.

While temporal proximity alone may not prove causation, it gains force when combined with other circumstantial indicators such as selective enforcement of a previously waived policy, procedural deviation from standard enrollment practices, and the School Board's reversal immediately after disability identification—all of which plausibly allege retaliatory motive. *Feist*, 730 F.3d at 454–55. The School Board's timing, acting within days of Appellant's IEP request and within days before the scheduled meeting is probative of retaliation, not coincidence.

### D. Discovery Is Necessary to Resolve Factual Disputes

At the pleading stage, a plaintiff need not prove discrimination or retaliation—only allege facts that plausibly suggest those claims. *Twombly*, 550 U.S. at 555. Here, discovery is essential to resolve factual disputes that cannot be determined from the pleadings alone.

First, discovery will clarify the School Board's pattern and practice regarding residency enforcement. The complaint alleges that the School Board

approved D.H.'s enrollment despite dual-address disclosure but later disenrolled him after disability identification.  Discovery will establish whether this was unique to D.H. or consistent with how the School Board applies its residency-exception policy (ROA.361–368).  Specifically, discovery will reveal:

- How many other non-resident students the School Board enrolled during the same period;

- Whether any were disenrolled, and if so, when and why;

- Whether the School Board enforced residency requirements uniformly or selectively;

- Whether the School Board's "discovery" of residency issues coincided with special-education eligibility determinations in other cases.

Evidence of selective enforcement would strongly support an inference of discrimination.

Second, discovery will illuminate the School Board's decision-making process and communications regarding D.H.'s disenrollment, including whether officials discussed his disability status, the anticipated costs of special-education services, alternatives to disenrollment, or whether the School Board followed standard procedures or provided Appellant an opportunity to cure any alleged deficiency.  The timing of disenrollment, shortly after the eligibility determination and days before the scheduled IEP meeting was to occur—

further warrants factual development. Discovery will reveal whether the School Board's explanation (routine residency review) or the Appellant's explanation (retaliation for asserting special-education rights) is supported by the evidence.

Third, discovery will determine whether the School Board's stated reason for disenrollment was pretextual. The complaint alleges that the School Board knew about the residency issue from the start but acted only after D.H. was identified as disabled. Discovery will establish whether that sequence was coincidental or whether disability was a motivating factor. Internal communications, emails, and meeting notes will show whether School Board officials discussed D.H.'s disability, the costs of providing services, or strategies to avoid those costs.

These are precisely the types of factual questions that discovery is designed to resolve. The district court's Rule 12(b)(6) dismissal prematurely foreclosed that inquiry and deprived the parent of the opportunity to obtain evidence necessary to prove her claims. At the pleading stage, the Appellant's allegations are more than sufficient to survive dismissal.

### E. Relief Requested

Appellant respectfully requests that this Court reverse the district court's July 8, 2025 judgment and remand for discovery and adjudication on the

merits of the Section 504 and Title II claims.  The complaint plausibly alleges that D.H. was excluded from the School Board's educational program by reason of disability and that his disenrollment was retaliatory for asserting special-education rights.  The School Board's abrupt reversal of a discretionary enrollment decision within thirteen days of disability identification, coupled with the three-day proximity between the scheduled IEP meeting and disenrollment, raises a plausible inference of discriminatory and retaliatory motive.  These well-pleaded allegations more than satisfy *Iqbal* and *Twombly* and should not have been dismissed at the pleading stage.

## II. Residency Is Not a Jurisdictional Bar to IDEA Relief

## A. Residency Determines Which LEA Is Responsible, Not Whether a Child Is Entitled to IDEA Protections

The district court erred by treating residency as a jurisdictional prerequisite that bars all IDEA relief, including procedural and stay-put protections.  Residency does not determine whether a child is entitled to IDEA protections; it determines which local educational agency ("LEA") is responsible for ensuring a FAPE.

As the Fifth Circuit held, "[t]he issue in this case is not whether [the child] is entitled to special education services under the IDEA, but rather which local agency is responsible for ensuring that FAPE is provided." *St.*

40

*Tammany Par. Sch. Bd. v. Louisiana*, 142 F.3d 776, 780 (5th Cir. 1998). The IDEA creates a federal entitlement to FAPE for all children with disabilities. 20 U.S.C. § 1412(a)(1)(A); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 181 (1982). This entitlement turns on disability and educational need, not a particular LEA's boundaries. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009). Once a state accepts IDEA funding, it assumes responsibility for all eligible children within its borders. *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 68 (1999).

By contrast, disputes over which LEA must provide services are allocation matters, not jurisdictional bars. *St. Tammany Par.*, 142 F.3d at 780. The district court's holding that D.H. was not entitled to any IDEA protections because he allegedly resided outside St. James Parish directly conflicts with *St. Tammany Par.*, which makes clear that residency determines only responsibility, not entitlement. Treating residency as jurisdictional allows school boards to evade IDEA obligations by raising residency objections after enrollment and eligibility, a result fundamentally inconsistent with *Honig v. Doe*, 484 U.S. 305, 310 (1988), and the IDEA's purpose of ensuring that all children with disabilities receive FAPE.

Moreover, this Court has long emphasized that the central question under the IDEA is whether the child received FAPE, not whether a procedural

41

threshold was satisfied. *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016). The district court's reliance on residency as a bar diverted attention from that substantive inquiry.

## B. The School Board Triggered IDEA Obligations and Is Estopped from Disclaiming Responsibility

### 1. Affirmative Acts and Discretionary Approval

The School Board enrolled D.H. with full knowledge of his parent's residence and childcare arrangement, assigned him a student identification number, conducted a special-education evaluation, and on October 22, 2024, determined him eligible for services. These affirmative acts—particularly the Superintendent-designee's discretionary approval under the Board's residency-exception policy (ROA.361–368) and the formal eligibility determination, triggered the Board's obligations under the IDEA. The Board cannot now disclaim those obligations based on residency facts it possessed from the outset and affirmatively waived at enrollment.

The School Board exercised this discretion knowingly. Despite a missing Social Security card and Appellant's explicit disclosure of dual addresses, the Superintendent's designee approved D.H.'s enrollment and allowed him to attend school for over two months. (ROA.13–14.) The School Board's subsequent reliance on those same residency facts to justify

disenrollment, only after D.H. was found eligible for special education, was an abrupt and selective reversal that plausibly suggests the disability determination, not the residency facts, motivated the decision.

**2. The Timing Paradox: Residency Known, Action Delayed, Then Sudden Reversal After Disability Identification**

The School Board's conduct reveals a fundamental contradiction: it possessed all residency information from the August 2024 enrollment date yet took no action for over two months.  Only after D.H. was found eligible for special education, and only three days before the scheduled IEP meeting that would trigger quantifiable financial obligations, did the School Board suddenly assert residency as a bar to services.  This timing sequence is not coincidental; it demonstrates that the School Board's stated reason (residency) was pretextual and that disability status motivated the disenrollment decision.  *St. Tammany Par.*, 142 F.3d at 780 (residency concerns allocation, not entitlement); *Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (burden on party seeking to alter status quo).

Under the IDEA's Child Find mandate, LEAs must identify and evaluate all children with disabilities within their jurisdiction. 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111.  Once an LEA enrolls and finds a child eligible, it assumes responsibility for ensuring FAPE. *Schaffer*, 546 U.S. at 52;

*Rowley*, 458 U.S. at 181.  The School Board cannot terminate these obligations unilaterally by asserting a belated residency challenge, particularly without providing the prior written notice and opportunity to contest required by 20 U.S.C. § 1415(b)(3), (c)(1); 34 C.F.R. § 300.503.

### 3. Selective Enforcement and Estoppel

Once a school board enrolls, evaluates, and serves a student, it cannot later disclaim responsibility under the IDEA.  *Wagner v. Bd. of Educ.*, 335 F.3d 297, 301 (4th Cir. 2003).  The School Board enrolled D.H., found him eligible, and scheduled an IEP meeting.  It cannot now avoid its obligations by invoking facts it knew from the start.  Appellant reasonably relied on the School Board's acceptance of D.H.'s enrollment by cooperating in the evaluation process and preparing for the scheduled IEP meeting.  D.H. has since been denied all special-education services, a complete deprivation of FAPE.

### C. The ALJ Failed to Assign the Burden of Proof, and the District Court Compounded the Error

The ALJ committed reversible error by holding a residency hearing without assigning the burden of proof.  In *Schaffer v. Weast*, 546 U.S. 49 (2005), the Supreme Court held that "the burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Id.* at 62.

44

When a school board seeks to disenroll a student it previously accepted and found eligible, it is the school board—not the parent—that seeks to alter the status quo and therefore bears the burden of proving non-residency.

Here, the School Board raised residency as an affirmative defense to its IDEA obligations. As the party asserting that D.H. was not entitled to services, the School Board bore the burden of proving non-residency. *Schaffer*, 546 U.S. at 56–58. Yet the ALJ never assigned that burden. (ROA.334–340.) The omission was not harmless: the burden of proof determines which party prevails when the evidence is close. *Id.* By failing to specify the burden, the ALJ deprived Appellant of a fair hearing and shifted the risk of error to the wrong party, violating due-process principles embedded in the IDEA. The district court compounded the error by adopting the ALJ's findings without conducting the independent review required by 20 U.S.C. § 1415(i)(2)(C). *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 395 (5th Cir. 2012). Deference to a flawed administrative decision that applied no burden of proof denied Appellant the *de novo* review Congress mandates.

The School Board also waived any challenge to the ALJ's jurisdiction by complying with the January 13, 2025 stay-put order, which found D.H. enrolled and entitled to remain in his placement. (ROA.327–331.) By reinstating D.H.'s enrollment pursuant to that order, the Board affirmatively

45

accepted the ALJ's jurisdiction, acknowledged that D.H. was a student entitled to IDEA protections, and conceded that residency was not a bar to those protections. The School Board cannot now repudiate that concession by asserting residency as a jurisdictional defense in federal court. This conduct—complying with stay-put while simultaneously arguing residency bars all IDEA relief, is fundamentally inconsistent and should estop the School Board from raising the jurisdictional defense.

## D. The District Court's Residency Holding Conflicts with the IDEA's Structure and Precedent

The district court's interpretation conflicts with the IDEA's statutory design and controlling precedent in three ways.

### 1. State Responsibility and Allocation

First, the IDEA requires states to ensure FAPE for all children residing in the state, not merely those in a particular LEA. 20 U.S.C. § 1412(a)(1)(A). Residency disputes within the state concern allocation, not entitlement. *St. Tammany Par.*, 142 F.3d at 780.

### 2. Procedural Safeguards Cannot Be Bypassed

Second, IDEA procedural safeguards apply to every enrolled child, regardless of residency disputes. The statute guarantees prior written notice and due-process hearings before any change in placement. 20 U.S.C. §

46

1415(b)(3), (c)(1), (f).  The School Board disenrolled D.H. without providing these safeguards—no prior written notice, no opportunity to contest, no due-process hearing before the disenrollment took effect.

If residency were jurisdictional, the School Board's conduct would be permissible: school boards could simply assert non-residency after enrollment and bypass all procedural protections entirely.  This would render the IDEA's procedural safeguards meaningless for any student whose residency is later questioned.  Such a result contradicts *Honig v. Doe*, 484 U.S. at 311–12, which emphasizes that procedural protections are not optional prerequisites but mandatory safeguards that apply to every change in placement.  The School Board cannot use residency as a jurisdictional escape hatch from obligations it affirmatively triggered by enrolling, evaluating D.H., and finding him eligible for special education.

**3. Statutory Silence on Residency as a Jurisdictional Requirement**

Third, the IDEA is silent on residency as a jurisdictional requirement. The statute does not state that residency is a prerequisite to IDEA protections, nor does it authorize school boards to disenroll students based on residency disputes.  By contrast, the IDEA explicitly addresses other prerequisites—such as the requirement to exhaust administrative remedies before filing suit, 20 U.S.C. § 1415(l), yet courts have held that even express statutory requirements

are not jurisdictional unless Congress clearly says so. *See Seth B.*, 810 F.3d at 967 (IDEA's central question is whether child received FAPE, not whether procedural threshold was satisfied). If Congress intended residency to be a jurisdictional bar, it would have said so explicitly. The absence of any such language confirms that residency is an allocation matter, not an entitlement bar.

## E. Relief Requested

Residency determines which LEA must provide services, not whether a child is entitled to IDEA protections. *St. Tammany Par.*, 142 F.3d at 780. The School Board enrolled D.H., evaluated him, and found him eligible, thereby triggering obligations it cannot now disclaim. The ALJ's failure to assign the burden of proof, compounded by the district court's adoption of those findings without independent review, constitutes reversible error. *Schaffer*, 546 U.S. at 62; *Hovem*, 690 F.3d at 395.

Appellant respectfully requests that this Court reverse the district court's holding that residency bars IDEA relief and remand with instructions to conduct the modified *de novo* review required by 20 U.S.C. § 1415(i)(2)(C) and to adjudicate Appellant's FAPE claims on the merits. Appellant further requests that this Court remand for adjudication of the Section 504 and Title II

claims, which were improperly dismissed based on the erroneous residency holding.

## III. The District Court Failed to Conduct Independent Review and Ignored Procedural Violations

## A. The District Court Failed to Conduct the Modified *de novo* Review Required by 20 U.S.C. § 1415(i)(2)(C)

The IDEA requires district courts to conduct a "modified *de novo*" review of administrative decisions, giving "due weight" to the ALJ's findings while independently reviewing the record and reaching their own conclusions. 20 U.S.C. § 1415(i)(2)(C); *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 395 (5th Cir. 2012). This standard is not deferential, it requires the court to conduct its own analysis and not simply adopt the ALJ's findings wholesale, particularly when those findings rest on procedural errors or fail to address independent violations.

Here, the district court adopted the ALJ's residency-based dismissal without conducting the independent review Congress mandates. (ROA.491–507.) The ALJ committed multiple procedural errors: (1) unduly delaying the stay-put decision; (2) holding a residency hearing without assigning the burden of proof, in violation of *Schaffer v. Weast*, 546 U.S. 49, 62 (2005); and (3) dismissing the case without adjudicating the School Board's obligation to

49

defend the appropriateness of its evaluation or fund an IEE, in violation of 34 C.F.R. § 300.502(b)(2). (ROA.334–340.) The district court compounded these errors by failing to address either violation in its dismissal order. (ROA.491–507.)

The burden-of-proof error alone requires reversal. In *Schaffer*, the Supreme Court held that "the burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." 546 U.S. at 62. When a school board seeks to disenroll a student it previously accepted and found eligible, the school board—not the parent—seeks to alter the status quo and therefore bears the burden of proving non-residency. Here, the School Board raised residency as an affirmative defense to its IDEA obligations (ROA.279–283), yet the ALJ never assigned the burden of proof. (ROA.334–340.) By adopting the ALJ's findings without addressing this procedural defect, the district court denied Appellant the independent review required by § 1415(i)(2)(C). *Hovem*, 690 F.3d at 395.

Moreover, this Court has emphasized that the central question under the IDEA is whether the child received FAPE, not whether a procedural threshold was satisfied. *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016). The district court's wholesale adoption of the ALJ's residency-based dismissal, without independent analysis of the procedural violations or

their impact on D.H.'s right to FAPE, diverted attention from that substantive inquiry and violated the modified *de novo* standard.

## B. The District Court Ignored an Independent Procedural Violation: The Unresolved IEE Request

### 1. Legal Standard and Regulatory Framework

Parental participation is the cornerstone of the IDEA. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205–06 (1982) (emphasizing "the importance Congress attached to … parental participation" in the IDEA's procedural safeguards). The right to an independent educational evaluation is a critical component of that participation. Under 34 C.F.R. § 300.502(b), when a parent disagrees with a school's evaluation, the parent may request an IEE at public expense, and the school board must, without unnecessary delay, either (1) fund the IEE, or (2) initiate a due-process hearing to defend the appropriateness of its evaluation. This mechanism ensures that parents can meaningfully challenge a school board's assessment and advocate for their child's educational needs.

A § 300.502(b)(2)(i) hearing exists to decide the evaluation's appropriateness: if the evaluation is appropriate, the parent is not entitled to an IEE at public expense; if the evaluation is not appropriate, the parent is entitled to a publicly funded IEE. *See* 34 C.F.R. § 300.502(b)(2); *Doug C. v. Hawaii*

*Dep't of Educ.*, 720 F.3d 1038, 1044–45 (9th Cir. 2013).  The School Board

bears the burden of proving appropriateness. *Id.*

### 2.      Background

Appellant requested an IEE at public expense on November 27, 2024.

(ROA.334–340.)  The St. James Parish School Board responded by filing its

own due-process complaint to defend the appropriateness of its evaluation,

thereby assuming the burden to prove appropriateness under § 300.502(b)(2)(i).

(ROA.334–340.)  The ALJ held a hearing on January 16, 2025, limited to

residency, and on January 31 dismissed Appellant's complaint for lack of

subject-matter jurisdiction based on alleged non-residency.  On the same day,

the ALJ dismissed the School Board's due process hearing request as "moot,"

leaving the IEE issue entirely unresolved.

Appellant filed her federal complaint on April 17, 2025, expressly

preserving the IEE claim.  The district court, however, failed to address the

issue in either its June 16, 2025 order denying injunctive relief or its July 8,

2025 order granting dismissal.  The court's orders contain no mention of the

IEE, no analysis of whether the ALJ's failure to adjudicate evaluation

appropriateness was a procedural violation, and no consideration of whether

that violation independently denied FAPE. (ROA.491–507.)

**3. The Board Invoked § 300.502(b)(2)(i) but Escaped Its Burden Through a Threshold Defense**

The regulations require the School Board to either prove appropriateness or fund the IEE; dismissal on another ground does not extinguish that obligation.  The Board cannot invoke a hearing process to block an IEE, then escape its burden by raising a threshold defense mid-process.  *Doug C.*, 720 F.3d at 1045.  Here, the School Board elected the hearing route to defend its evaluation, thereby assuming the burden to prove appropriateness. (ROA.334–340.)  The ALJ, however, dismissed on residency without holding or deciding the evaluation-appropriateness question, leaving the IEE request unresolved. (ROA.334–340.)

A School Board's failure to complete IEE adjudication persists until it funds the IEE or secures a final ruling that its evaluation is appropriate. *See N.L. v. Knox Cnty. Schs.*, 315 F.3d 688, 696 (6th Cir. 2003); *Doug C.*, 720 F.3d at 1044–45.  The School Board filed to defend its evaluation yet never obtained an appropriateness ruling; the ALJ's residency dismissal left the IEE issue unaddressed. (ROA.334–340.)  The School Board's § 300.502(b)(2) obligation therefore remains unmet, and Appellant is entitled to either a publicly funded IEE or a completed hearing and decision on appropriateness. (ROA.334–340.)

**4. The IEE Obligation Survived the Residency Dismissal**

The duty to respond under § 300.502(b)(2) is both evaluation-specific and agency-specific. It attaches to the school board that conducted the evaluation being challenged—in this case, St. James Parish—and cannot be extinguished by a later dispute over residency. Once a parent requests an IEE, that school board must either defend its evaluation or fund an independent one; it may not avoid its obligation by claiming non-residency after the fact. The regulation contains no residency exception. If D.H. is later determined to reside in another parish, responsibility for providing FAPE may transfer, but the duty to respond to the parent's specific IEE request remains with St. James, the school board whose evaluation is at issue. A new school board, such as St. John Parish, would assume responsibility only after performing its own evaluation and would then be subject to any subsequent IEE request concerning that assessment. It cannot be required to defend or fund an IEE of an evaluation it did not conduct.

By dismissing both Appellant's due-process complaint and the School Board's IEE-related due process complaint as "moot," the ALJ left the IEE request unresolved, violating the regulation's express mandate. The district court compounded this error by adopting the dismissal without requiring St. James to fulfill its obligation or remanding the matter for decision on the IEE's merits.

**5. The District Court's Omission Was Legal Error**

Even if the district court correctly concluded that D.H. was not a resident of St. James Parish, that finding did not eliminate the School Board's existing obligation under § 300.502(b)(2). The court should have either (1) remanded to the ALJ to determine whether St. James' evaluation was appropriate, or (2) resolved the IEE issue itself based on the administrative record. Its silence left Appellant's claim unaddressed, contrary to the IDEA's mandatory structure and its guarantee of meaningful parental participation. Courts may not dispose of IDEA cases on threshold grounds while ignoring procedural violations that can independently deny FAPE. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009); *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000). The district court dismissed on residency without addressing the IEE claim at all, no mention of the IEE, no analysis of whether the ALJ's failure to adjudicate evaluation appropriateness was a procedural violation, and no consideration of whether that violation independently denied FAPE. (ROA.491–507.) That omission requires reversal.

**6. The School Board Must Either Fund the IEE or Complete the Appropriateness Hearing on a Reasonable Timeline**

Section 300.502(b)(2) creates a binary: fund the IEE or prove appropriateness. The School Board chose the hearing route and must

complete it; the residency dismissal did not satisfy its regulatory duty.

(ROA.334–340.) The "without unnecessary delay" requirement is mandatory.

*See K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 805 (8th Cir. 2011). Parents

hold independent, enforceable rights—including the IEE right—that cannot be

nullified by a threshold dismissal leaving the IEE unresolved. *Winkelman v.*

*Parma City Sch. Dist.*, 550 U.S. 516, 529, 533 (2007). (ROA.491–507, 334–340.)

A dismissal that leaves the IEE unresolved undermines the core

safeguard of parental participation. *Rowley*, 458 U.S. at 205–06. The district

court's failure to address this independent procedural violation, separate and

apart from the residency issue, denied Appellant the meaningful review

Congress mandates and deprived D.H. of a critical component of FAPE.

## C. Relief Requested

The district court's failure to conduct independent review under 20 U.S.C. §

1415(i)(2)(C), combined with its failure to address the unresolved IEE request,

requires reversal. Appellant respectfully requests that this Court reverse the

district court's dismissal and remand with instructions to:

1. Conduct the modified *de novo* review required by § 1415(i)(2)(C),
   including independent analysis of the ALJ's procedural errors (failure to
   assign burden of proof and failure to adjudicate IEE appropriateness);

2. Determine whether the ALJ's failure to adjudicate the IEE request constituted a procedural violation that independently denied FAPE;

3. Order the School Board, within 60 days of remand, to either fund an IEE at public expense or complete a full hearing on evaluation appropriateness under § 300.502(b)(2)(i);

4. Award compensatory education for the period of denied services stemming from the unresolved IEE (October 22, 2024, to present);

5. Award reasonable attorney's fees and costs under 20 U.S.C. § 1415(i)(3)(B); and

6. Retain appellate jurisdiction to ensure compliance with this Court's mandate.

## IV. The District Court Erred in Refusing to Recognize the Binding Effect of the Stay-put Order

### A. Stay-put Operates as an Automatic Statutory Injunction During the Pendency of Any Proceedings

The IDEA's stay-put provision operates as an automatic statutory injunction that maintains a child's educational placement during the pendency of any administrative or judicial proceedings. *Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57, 61 (5th Cir. 2016); see also *Honig v. Doe*, 484 U.S. 305, 323 (1988) (Congress enacted stay-put to "strip schools of the unilateral authority

57

they had traditionally employed to exclude disabled students" and to require that placement be maintained "until all review proceedings were completed"). This automatic injunction removes from schools the unilateral authority to exclude students with disabilities during the pendency of proceedings and ensures continuity of educational services while disputes are resolved.

The district court erred by holding that stay-put protections terminated upon the ALJ's administrative dismissal and by permitting the School Board to disenroll D.H. without procedural safeguards. (ROA.491–507.) In *Honig*, the Supreme Court explained that Congress enacted stay-put to "strip schools of the unilateral authority they had traditionally employed to exclude disabled students," particularly those with emotional disturbances, and to mandate that a student's placement be maintained "until all review proceedings were completed, unless the parents and state or local educational agencies otherwise agree." *Id*. at 323.   Although *Honig* arose in the context of emotionally disturbed students, its reasoning applies broadly: stay-put operates as a mandatory statutory command that bars any school board from unilaterally excluding or disenrolling a child with a disability while disputes remain pending.

Stay-put is not a discretionary equitable remedy; it is a mandatory statutory command that operates automatically and without regard to the

merits of the underlying dispute. *Id.* at 323–24; *Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 372 (1985) (stay-put "imposes a mandatory duty"). This Court has adopted *Honig's* framework, holding that "the stay-put provision operates as an automatic injunction that maintains the child's educational placement during the pendency of any administrative or judicial proceedings." *Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57, 61 (5th Cir. 2016).

Here, the ALJ issued a stay-put order on January 13, 2025, finding that D.H. was enrolled in CMGA and entitled to remain in his educational placement during the pendency of proceedings. (ROA.327–331.) The School Board initially complied by reinstating D.H.'s enrollment. (ROA.332.) When the ALJ later dismissed the case on jurisdictional grounds (ROA.334–340), the district court held that stay-put protections "terminated upon administrative dismissal" and refused to enforce the order. ( ROA.491–507.) That holding conflicts with *Honig* and *Tina M.*, which make clear that stay-put continues during the pendency of any proceedings, including federal court review after administrative dismissal.

**B. Stay-put Protections Continue During Federal Court Proceedings and Do Not Terminate Upon Administrative Dismissal**

The statute is unambiguous: stay-put applies "during the pendency of any proceedings conducted pursuant to this section." 20 U.S.C. § 1415(j).

Courts uniformly interpret this language to encompass both administrative and judicial proceedings. See *Tina M.* v. *St. Tammany Par. Sch. Bd.*, 816 F.3d 57, 61 (5th Cir. 2016) ("The stay-put provision operates as an automatic injunction that maintains the child's educational placement during the pendency of any administrative or judicial proceedings."); *Honig v. Doe*, 484 U.S. 305, 323 (1988) (stay-put runs "until all review proceedings were completed"). Reading stay-put to end the moment the ALJ dismisses a case reads "judicial" out of § 1415(j) and undermines the statutory protection Congress enacted to ensure educational stability during ongoing disputes. Accordingly, stay-put protections continue through federal court review and remain in force until all proceedings are completed or the parties otherwise agree.

The Fourth Circuit's reasoning in *Wagner v. Board of Education*, 335 F.3d 297 (4th Cir. 2003), is especially persuasive. There, the court explained that the IDEA's stay-put provision requires a child to remain in their "then current educational placement" during the pendency of proceedings and held that this protection extends through federal court review. *Id.* at 301.

Here, Appellant filed the federal complaint timely following the ALJ's order. At that moment, "judicial proceedings" commenced, and stay-put should have continued. 20 U.S.C. § 1415(j). The district court's refusal to

60

enforce stay-put, allowed the School Board to exclude D.H. during federal court review—the very unilateral exclusion *Honig* forbids. (ROA.491–507.)

## C. The School Board Waived Any Challenge to the Stay-put Order by Complying with It and Failing to Appeal

Waiver is the intentional relinquishment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993). The School Board waived any challenge to the stay-put order by complying and reinstating D.H.'s enrollment without appealing. (ROA.327–332.)

On January 13, 2025, after a stay-put hearing, the ALJ found D.H. enrolled and entitled to remain in his placement and issued a written order. (ROA.327–331.) The School Board did not appeal; it complied by reinstating D.H.'s enrollment. (ROA.332.) Eighteen days later, on January 31, 2025, the ALJ dismissed on residency grounds. (ROA.334–340.) Only then did the School Board assert that stay-put no longer applied. This sequence constitutes waiver. See *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 850–51 (1986); *United States v. Vonn*, 535 U.S. 55, 62 (2002).

The School Board's compliance also confirms acceptance of the ALJ's authority; it cannot now disavow that authority because a later ruling favored it. See *Zinermon v. Burch*, 494 U.S. 113, 129 (1990).

61

**D. The District Court Erred by Treating the Final Stay-put Order as Moot and Permitting a Collateral Attack**

The ALJ's January 13, 2025 stay-put order was unambiguous: D.H. was enrolled at CGMA, and the ALJ determined he was entitled to remain there during the proceedings. (ROA.327–331.) Critically, even when dismissing the case on residency grounds, the ALJ expressly acknowledged that "A stay-put order was granted, which allowed Minor to remain in School during the pendency of the due process proceedings." (ROA.334–340.) This recognition confirms that the stay-put order was a valid, separate procedural protection—independent of the jurisdictional determination—and the ALJ made no attempt to vacate or disturb it.

Under well-established administrative law, unappealed orders are final and binding. *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 280 (1987); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). This Court recognizes the same principle. *Dun & Bradstreet Corp. v. FTC*, 552 F.2d 582, 585 (5th Cir. 1977). The School Board participated in the ALJ's proceedings and elected not to appeal the stay-put determination. The order therefore became final and binding. The district court's refusal to enforce stay-put—treating it as "mooted" by the later jurisdictional dismissal—amounts to an impermissible collateral attack on a final administrative determination. The two

62

determinations operated on different temporal and legal tracks. The stay-put order addressed D.H.'s procedural right to placement stability during the proceedings. The residency dismissal addressed whether the School Board had jurisdiction over the underlying merits. A dismissal on jurisdictional grounds cannot retroactively nullify a procedural protection that had already become final. To hold otherwise would permit school boards to use threshold defenses as a backdoor method to escape compliance with binding administrative orders, precisely the strategic manipulation the IDEA's procedural safeguards are designed to prevent.

Had the ALJ intended to invalidate the stay-put order, she would have done so explicitly either in the dismissal order itself or through a separate motion to vacate. The ALJ's silence on this point, combined with her express acknowledgment that stay-put "was granted," confirms the order remained operative and binding.

This Court has recognized that stay-put functions as an "automatic injunction" under the IDEA. *Tina M.*, 816 F.3d at 60; *Honig*, 484 U.S. at 326–27. The district court's refusal to enforce the ALJ's unappealed stay-put order therefore violated administrative-finality principles and the IDEA's explicit guarantee that stay-put protections remain in effect throughout all proceedings.

**E. Relief Requested**

63

The district court erred in refusing to enforce the ALJ's January 13, 2025 stay-put*t* order. The IDEA's stay-put provision operates as an automatic statutory injunction that continues "during the pendency of any proceedings conducted pursuant to this section." 20 U.S.C. § 1415(j). Courts uniformly interpret this language to include both administrative and judicial proceedings. *Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57, 61 (2016); *Honig v. Doe*, 484 U.S. 305, 323 (1988).

The School Board waived any challenge to the order by complying with it and failing to appeal. (ROA.327–332.) Because the unappealed stay-put order became final and binding, the district court's refusal to enforce it constituted an impermissible collateral attack. (ROA.491–507.) By disregarding the order, the court effectively nullified D.H.'s statutory right to educational stability during the pendency of these proceedings—the precise harm Congress enacted stay-put to prevent.

For these reasons, Appellant respectfully requests that this Court reverse the district court's judgment, enforce the January 13, 2025 stay-put order, and remand for adjudication of D.H.'s IDEA and Section 504 claims on the merits.

## V. D.H. Is Entitled to Compensatory Education for the Period of Complete Denial of FAPE

### A. Legal Standard

Compensatory education is an equitable remedy designed to place a student in the position he would have occupied but for the denial of a FAPE. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). Courts and hearing officers have broad discretion to fashion relief "appropriate to ensure that the child receives the educational benefits to which he was entitled." *School Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985). The remedy is not punitive but corrective, it must be "reasonably calculated to provide the educational benefits that likely would have accrued from special-education services the child should have received." *Reid v. School Board of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005); *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1289 (11th Cir. 2008).

The Fifth Circuit has consistently recognized that when a school board fails to provide services to which a child is entitled, compensatory education is the appropriate remedy. *Bobby R.*, 200 F.3d at 349–50. The IDEA authorizes courts to "grant such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), including equitable remedies restoring the student's lost educational opportunity.

## B. D.H. Experienced a Complete Denial of FAPE Following Disenrollment

The record shows that after the School Board identified D.H. as eligible for special-education services on October 22, 2024, it failed to provide any

65

individualized educational services whatsoever. (ROA.15–17.) On November 4, 2024, the School Board disenrolled D.H. and canceled his scheduled initial IEP meeting. From that date forward, D.H. received no educational instruction, therapy, or behavioral support via an IEP—a per se denial of FAPE under *Bobby R.*, 200 F.3d at 349.

## C. The Equities Strongly Favor Compensatory Relief

Courts fashion compensatory education to restore the benefit lost, not to punish the school board. *Reid*, 401 F.3d at 524. Equity requires that the student receive additional specialized instruction, related services, and supports sufficient to place him in the position he would have occupied absent the violation.

Relevant equitable factors include:

- The length of the deprivation;

- The student's unique needs and the services that were interrupted; and

- The feasibility of providing intensive make-up instruction or extended eligibility.

Here, the equities weigh decisively in favor of relief. The School Board found D.H. eligible but provided nothing thereafter. The complete absence of specialized instruction or services for the entire period following November 4, 2024, when D.H. was unilaterally disenrolled, caused measurable educational

regression and emotional harm. Restoring that loss requires an award of compensatory services proportionate to the missed months of instruction and therapy, potentially through extended-school-year or post-eligibility programming. *See Bobby R.*, 200 F.3d at 349–50 (approving individualized compensatory plan restoring lost benefits).

## D. Remedy Requested

Appellant respectfully requests that this Court reverse the district court's dismissal and remand with instructions to determine compensatory education consistent with *Bobby R.* and *Reid*. Specifically, the hearing officer or district court should:

- Quantify the period of deprivation beginning November 4, 2024, and continuing until D.H. receives appropriate special-education services; and

- Order compensatory instruction, related services, or extended eligibility sufficient to remediate the educational harm resulting from the School Board's unlawful disenrollment and failure to implement his eligibility determination.

Specifically, the Court should order one or more of the following: (1) compensatory special-education instruction for a period equal to or exceeding the deprivation period; (2) extended school-year services for the following two

school years; (3) intensive related services to remediate regression; or (4) a combination of these remedies tailored to D.H.'s individual needs and the specific harm caused by the deprivation.

Such relief is necessary to fulfill Congress's intent that every eligible child actually receive the education to which he is entitled under the IDEA.

## CONCLUSION

This case presents a clear and consequential error of law. The district court's decision allows a public school board to enroll a child, evaluate him, determine that he qualifies for special-education services, and then—days before the first IEP meeting—unilaterally disenroll him based on residency facts it had known and accepted from the outset. If affirmed, that ruling would enable school boards to circumvent the IDEA, Section 504, and the ADA by invoking procedural pretexts to avoid providing costly services once disability is identified. This is precisely the strategic manipulation that Congress enacted the IDEA to prevent, and it would effectively render the stay-put provision and other procedural safeguards meaningless. The IDEA does not tolerate such manipulation, and this Court's precedent does not permit it.

Residency determines which local educational agency is responsible for providing FAPE, not whether a child is entitled to IDEA protections at all. *St. Tammany Parish School Board v. Louisiana*, 142 F.3d 776, 780 (5th Cir. 1998). Once the St. James Parish School Board accepted D.H.'s enrollment, evaluated him, and determined eligibility, it assumed IDEA obligations that could not be nullified through a belated residency challenge. Its failure to convene an IEP meeting, implement services, or fund an IEE violated both the IDEA's procedural and substantive guarantees. The ALJ's failure to assign the burden of proof under *Schaffer v. Weast*, 546 U.S. 49 (2005), and the district court's wholesale adoption of those flawed findings further denied Appellant the independent review Congress mandates under 20 U.S.C. § 1415(i)(2)(C).

Although the ALJ's January 13, 2025 stay-put order was binding and enforceable, the parent no longer seeks its enforcement. D.H. has since been enrolled elsewhere, and the family's interest lies not in returning him to the prior school but in securing a full adjudication of their rights and appropriate remedial relief for the violations already committed. The existence of the stay-put order nonetheless underscores the seriousness of the School Board's procedural misconduct and the need for meaningful judicial correction. D.H. has never received the special-education services to which he was entitled following the October 22, 2024 eligibility determination. The complete

cessation of services constitutes a per se denial of FAPE warranting compensatory education under *Houston ISD v. Bobby R.*, 200 F.3d 341 (5th Cir. 2000). Equity and precedent require that D.H. receive remedial services sufficient to place him in the position he would have occupied but for the unlawful disenrollment.

For the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's judgment and remand for proceedings consistent with the legal principles established by the IDEA, Section 504, and Title II of the ADA. The School Board's actions, enrolling D.H., evaluating and identifying him as eligible for special education, then summarily disenrolling him without procedural safeguards based on previously known residency information, constituted disability discrimination and a violation of clearly established statutory rights. The district court's rulings erroneously treated residency as a jurisdictional bar rather than a question of local agency responsibility, misapplied governing law by failing to conduct modified *de novo* review, disregarded binding procedural protections, and ignored the ALJ's procedural errors, the unresolved IEE, and compensatory services claims. Appellant also requests the following case-specific relief:

(a) Reversal of the district court's dismissal of all IDEA, Section 504, and ADA claims;

(b) Remand with instructions to conduct a modified *de novo* review of the administrative record as required by 20 U.S.C. § 1415(i)(2)(C), including independent adjudication of FAPE and discrimination claims on the merits;

(c) Order that the School Board either fund an IEE at public expense or complete a full appropriateness hearing in accordance with 34 C.F.R. § 300.502(b)(2)(i);

(d) Award compensatory education proportional to the period of educational deprivation, including related services and/or extended eligibility consistent with *Bobby R.*; and

(e) Award reasonable attorney's fees and costs, together with any further relief this Court deems just and proper to fulfill Congress's mandate that children with disabilities not be excluded from the educational opportunities to which they are legally entitled.

Reversal is necessary to restore the procedural integrity and substantive protections Congress intended under the IDEA and to reaffirm that school boards cannot escape their obligations through after-the-fact technicalities or residency pretexts.

/s/ Kimona Hogan
**KIMONA HOGAN**

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, I electronically filed the foregoing Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I further certify that the foregoing instrument has been served via the Court's ECF filing system on October 29, 2025, on all registered counsel of record.

/s/ Kimona Hogan
**KIMONA HOGAN**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11796 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface, Calisto MT 14-point font, which conforms to the requirements of the rule.

**Respectfully submitted,**

/s/ Kimona Hogan
**KIMONA HOGAN**
HOGAN LAW FIRM, L.L.C.
176 Misty Pike Drive
Raleigh, North Carolina 27603
(225) 800-7378
hoganlawfirm@yahoo.com
**Counsel for Plaintiff–Appellant**

72